# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

**Case No. _____**

IMMOKALEE WATER AND SEWER DISTRICT,

             *Plaintiff*,

    vs.

3M COMPANY (f/k/a Minnesota Mining and
Manufacturing Co.); AGC CHEMICALS
AMERICAS INC.; AGC, INC. (f/k/a Asahi
Glass Co., Ltd.); ANGUS INTERNATIONAL
SAFETY GROUP, LTD; ARCHROMA
MANAGEMENT, LLC; ARCHROMA U.S., INC.;
ARKEMA, INC.; BASF CORPORATION;
BUCKEYE FIRE EQUIPMENT COMPANY;
CARRIER GLOBAL CORPORATION; CENTRAL
SPRINKLER, LLC; CHEMDESIGN PRODUCTS,
INC.; CHEMGUARD, INC.; CHEMICALS INC.;
CHUBB FIRE, LTD.; CLARIANT CORPORATION;
CORTEVA, INC.; DEEPWATER CHEMICALS,
INC.; JOHN DOE DEFENDANTS 1-49; DUPONT
DE NEMOURS, INC.; DYNAX CORPORATION;
E. I. DUPONT DE NEMOURS AND COMPANY;
FIRE PRODUCTS GP HOLDING, LLC; JOHNSON
CONTROLS INTERNATIONAL, PLC; KIDDE PLC,
INC.; KIDDE-FENWAL, INC.; NATION FORD
CHEMICAL COMPANY; NATIONAL FOAM, INC.;
RAYTHEON TECHNOLOGIES CORPORATION
(f/k/a United Technologies Corporation); THE CHEMOURS
COMPANY; THE CHEMOURS COMPANY FC, LLC;
TYCO FIRE PRODUCTS LP; and UTC FIRE &
SECURITY AMERICAS CORPORATION, INC.,

             *Defendants*.

_____/

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Twentieth Judicial Circuit in and for Collier County, Florida, to the United States District Court for the Middle District of Florida.  As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff, Immokalee Water and Sewer District, seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, formulating, marketing, distributing, and/or selling fluorosurfactant products, including aqueous film-forming foam ("AFFF"), which Plaintiff alleges has resulted in contamination.

2.      Specifically, Plaintiff alleges that Defendants' fluorosurfactant products, including AFFF, contained per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that the use of these substances caused contamination of the Plaintiff's water sources, water supplies, wells, piping, distribution system, water treatment systems, and other property (collectively, "Plaintiff's Property").

3.      At least some of the AFFF that gives rise to Plaintiff's claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF").  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco claims immunity from tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.      This action was filed on April 24, 2023, in the Twentieth Judicial Circuit in and for Collier County, Florida, bearing Case No. 11-2023-CA-001864-0001-XX (DE 1-1, Complaint).

5.      Tyco Fire Products LP was served with the Summons and Complaint on May 9, 2023.  Chemguard, Inc. has not been served in this action.  This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

6. In accordance with Local Rule 1.06(b), Tyco is filing with this Notice of Removal copies of all process, pleadings, orders, and other papers on file in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida. (DE 1-1; DE 1-2; DE 1-3).

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 89(b) and 1441(a) because the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida, is located within the Middle District of Florida.

8. Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

9. Plaintiff generally alleges that Defendants, including Tyco, have designed, manufactured, marketed, distributed, and/or sold fluorosurfactant products, including AFFF, which contain PFAS. (*See* DE 1-1, Compl. ¶¶ 6, 8, 41, 59). Plaintiff alleges that the use, release, storage, and/or disposal of those fluorosurfactant products, including AFFF, have caused contamination of Plaintiff's Property. (*Id.* ¶¶ 6–15). Plaintiff further alleges that it has incurred and will incur costs associated with the investigation, remediation, removal, disposal, treatment,

4

and monitoring of the PFAS contamination of Plaintiff's Property.  (*Id.* ¶ 1, Prayer for Relief at 34–35).

10.    Plaintiff seeks to recover costs and damages associated with the alleged contamination of Plaintiff's Property.  (*Id.* ¶¶ 1, 95, 105, 116, 120, 135, 138, Prayer for Relief at 34–35).  In addition to damages for past and future costs of addressing contamination of Plaintiff's Property, Plaintiff also seeks damages for diminished property value, consequential damages, pre- and post-judgement interest, and attorneys' fees.  (*Id.* Prayer for Relief at 34–35).

11.    Plaintiff asserts claims against all Defendants for strict liability–defective design (*Id.* ¶¶ 80–95), strict liability–failure to warn (*id.* ¶¶ 96–105), public nuisance (*id.* ¶¶ 106–116), private nuisance (*id.* ¶¶ 117–120), negligence (*id.* ¶¶ 121–135), and negligence *per se* (*id.* ¶¶ 136–138).  Plaintiff also brings a claim for violation of the Uniform Fraudulent Transfer Act against Defendants E. I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and DuPont De Nemours, Inc.  (*Id.* ¶¶ 139–150).

12.    Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the Twentieth Judicial Circuit in and for Collier County, Florida.

13.    By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process,

jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

14.     Tyco reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1).

15.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.   Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) the plaintiff's claims are based on the defendant's conduct "acting under" the United States, its agencies, or officers; (c) the plaintiff's claims are "for or relating to" the defendant's acts under color of federal office; and (d) the defendant raises a colorable federal defense.  *Papp*, 842 F.3d at 812; *accord Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

16.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441(a)(1). Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense

6

depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citations omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp*, 842 F.3d at 812 (alterations in original; internal quotation marks omitted).

17.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiff's injuries are caused at least in part by MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that plaintiff's injuries are caused, at least in part, by

MilSpec AFFF.  *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6.  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

A.      **MilSpec AFFF**

18.     The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments.  Since the late 1960s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[2] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

personnel.  Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety[.]"[3]

19.     The manufacture and sale of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command, part of the Department of Defense ("DoD"), as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea

---

[3]  U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4]  The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5]  Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6]  *Id.*

Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

20.    From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."    All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire period of time at issue in the Complaint.   In 2019 the MilSpec removed the requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants.  Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.   Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS while still meeting all other military specification requirements.

**B.    All The Requirements Of 28 U.S.C. § 1442(a)(1) Are Satisfied.**

*1.    The "Person" Requirement Is Satisfied.*

21.    The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a

10

limited partnership and corporation, respectively) meet the definition of "persons" under the statute.   For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships[.]" *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

### 2.   The "Acting Under" Requirement Is Satisfied.

22.   The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812.   The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted).   "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Id.* (emphasis in original).

23.   The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination that is the focus of Plaintiff's claims stems in part from MilSpec AFFF, a vital product provided by Tyco that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.   MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See*

*Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[7]  Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF.  *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–4 (holding likewise in case involving MilSpec AFFF used at Part 139 airport); MDL Order 3, at 3–4 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

12

24.     In designing and manufacturing the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers.  Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

### 3.     The "Under Color Of Federal Office" Requirement Is Satisfied.

25.     The third requirement, that the lawsuit be "for or related to" the defendant's actions taken "under color of federal office," is satisfied when there is a "connection or association" between the defendant's challenged actions and the federal office.  *Papp*, 842 F.3d at 813.  As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low."  *Isaacson*, 517 F.3d at 137.[9]

26.     Here, Plaintiff alleges that the use of PFAS in AFFF is the source of its injuries.  Tyco contends that some of the AFFF giving rise to Plaintiff's claimed injuries was MilSpec AFFF, and that the use of PFAS in MilSpec AFFF was required

---

[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

by military specifications.  As a result, Plaintiff's claims against Tyco are connected to its acts taken under color of federal office.  *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1,  2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same).  It is irrelevant that Plaintiff does not expressly contend that it has been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.   *The "Colorable Federal Defense" Requirement Is Satisfied.*

27.   The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

28.   At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win

his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407);

*see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be

'clearly sustainable,' as the purpose of the statute is to secure that the validity of the

defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster

Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal,

defendant must raise "colorable federal defense").  At the removal stage, the inquiry

"is purely jurisdictional, and neither the parties nor the district courts should be

required to engage in fact-intensive motion practice, pre-discovery, to determine the

threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-

Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court

does not 'determine credibility, weigh the quantum of evidence or discredit the

source of the defense' at this stage.  Instead, [the court] only determine[s] whether

there are sufficient facts alleged to raise a colorable defense." (internal citation

omitted)).  Moreover, "this inquiry is undertaken whilst viewing the facts in the light

most favorable to Defendants[.]"  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d

770, 783–84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges

the factual sufficiency of the defendant's defense, the defendant should 'have the

opportunity to present [his] version of the facts to a federal, not a state, court.'"

*Cuomo*, 771 F.3d at 116 (alteration in original; citation omitted).

29.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.  Tyco has satisfied these elements for purposes of removal.

30.     The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989).  Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping."  It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.  Those specifications are "reasonably precise" in requiring the use of PFAS.  As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family.  Even since that express requirement was removed from the specification, the use of PFAS

16

has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.  In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product.  *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

31.    With respect to the second requirement, Tyco's products have appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.  *See id.* at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

32.    Regarding the third requirement, for purposes of removal the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing

protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[10]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[11]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA

---

[10] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[11] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires[.]"[12]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[13]  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design." (citation omitted)); MDL Order 1, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

---

[12] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[13] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

33.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *10, 12–13.

34.     Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

35.     In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents genuine issues of fact for trial. *See In re Aqueous Film-*

*Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, Tyco hereby removes this action from the Twentieth Judicial Circuit in and for Collier County, Florida, to this Court.

Dated: May 30, 2023          Respectfully submitted,

*/s/ Michael D. Sloan*
Michael D. Sloan (FBN 104385)
**CARLTON FIELDS, P.A.**
CityPlace Tower
525 Okeechobee Blvd., Ste. 1200
West Palm Beach, Florida 33401
P: (561) 822-2979
F: (561) 659-7368
Email: msloan@carltonfields.com

*Counsel for Tyco Fire Products, LP and Chemguard, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 30, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that copies of the foregoing **NOTICE OF REMOVAL,** with its Exhibits, were served on all parties on the attached Service List, in the manner specified, on May 30, 2023.

*/s/ Michael D. Sloan*
Michael D. Sloan

## SERVICE LIST

| | |
|---|---|
| Louise R. Caro<br>COSSICH, SUMICH, PARSIOLA<br>& TAYLOR, LLC<br>8397 Highway 23, Suite 100<br>Belle Chasse, LA 70037<br>lcaro@carolawpa.com<br>*Counsel for Plaintiff*<br><u>Served via E-mail</u> | Laura Donaldson<br>MANSON BOLVES<br>DONALDSON TANNER, P.A.<br>109 North Brush Street, Suite 300<br>Tampa, FL 33602<br>ldonaldson@mansonbolves.com<br>*Counsel for Plaintiff*<br><u>Served via E-mail</u> |
| Thomas L. Young<br>YOUNG & PARTNERS, LLP<br>320 West Kennedy Boulevard, Suite 650<br>Tampa, FL 33606<br>tyoung@tlylaw.com<br>*Counsel for Plaintiff*<br><u>Served via E-mail</u> | Clarke G. Hobby<br>HOBBY & HOBBY, P.A.<br>109 N. Brush Street, Suite 250<br>Tampa, FL 33602<br>clarke.hobby@hobbylaw.com<br>*Counsel for Plaintiff*<br><u>Served via E-mail</u> |
| David R. Erickson<br>Brent Dwerlkotte<br>SHOOK, HARDY & BACON<br>L.L.P.<br>2555 Grand Blvd.<br>Kansas City, MO 64108<br>Tel: (816) 474-6550<br>derickson@shb.com<br>dbdwerlkotte@shb.com<br>Counsel for Defendants E. I. duPont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC<br><u>Served via E-mail</u> | Daniel L. Ring<br>Tyler D. Alfermann<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Tel: (312) 782-0600<br>dring@mayerbrown.com<br>talfermann@mayerbrown.com<br>Counsel for Defendant 3M Company<br><u>Served via E-mail</u> |

|  | Kat Hacker<br>BARTLIT BECK LLP<br>1801 Wewatta, Suite 1200<br>Denver, CO 80202<br>Tel: (303) 592-3100<br>dupont@bartlitbeck.com<br>Counsel for Defendants Corteva,<br>Inc. and DuPont de Nemours, Inc.<br>Served via E-mail |
|---|---|
| Jonathan I. Handler<br>Keith H. Bensten<br>DAY PITNEY LLP<br>One Federal Street, 29th Floor<br>Boston, MA 02110<br>Tel: (617) 345-4600<br>jihandler@daypitney.com<br>kbensten@daypitney.com<br>Counsel for Defendants Kidde-<br>Fenwal, Inc., Carrier Global<br>Corporation, Kidde PLC, Inc.,<br>Chubb Fire, Ltd., UTC Fire &<br>Security Americas Corporation,<br>Inc., Raytheon Technologies<br>Corporation<br>Served via E-mail | Keith E. Smith<br>GREENBERG TRAURIG, LLP<br>1717 Arch Street, Suite 400<br>Philadelphia, PA 19103<br>Tel: (215) 988-7800<br>smithkei@gtlaw.com<br>Counsel for Defendant National<br>Foam Inc.<br>Served via E-mail |
| Michael L. Carpenter<br>GRAY LAYTON KERSH<br>SOLOMON<br>FURR & SMITH, P.A.<br>516 S. New Hope Road<br>Gastonia, NC 28054<br>Tel: 704-865-4400<br>mcarpenter@gastonlegal.com<br>Counsel for Defendant Buckeye<br>Fire Equipment Company<br>Served via E-mail | Heidi Levine<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 839-5300<br>hlevine@sidley.com<br>Counsel for Defendant Arkema, Inc.<br>Served via E-mail |

24

| | |
|---|---|
| John R. Wellschlager<br>DLA PIPER LLP (US)<br>The Marbury Building<br>6225 Smith Avenue<br>Baltimore, MD 21209<br>Tel: (410) 580-3000<br>john.wellschlager@dlapiper.com<br>Counsel for Defendant BASF<br>Corporation<br>Served via E-mail | Jonathan B. Blakley<br>GORDON REES SCULLY<br>MANSUKHANI, LLP<br>One North Franklin, Suite 800<br>Chicago, IL 60606<br>Tel: (312) 565-1400<br>jblakley@grsm.com<br>Counsel for Defendant ChemDesign<br>Products Inc.<br>Served via E-mail |
| Melanie Black Dubis<br>Charles E. Raynal IV<br>PARKER POE ADAMS &<br>BERNSTEIN<br>LLP<br>301 Fayetteville Street, Suite 1400<br>Raleigh, NC 27601<br>Tel: (919) 828-0564<br>melaniedubis@parkerpoe.com<br>charlesraynal@parkerpoe.com<br>Counsel for Defendants Archroma<br>U.S., Inc., Archroma Management,<br>LLC, and Clariant Corporation<br>Served via E-mail | John F. Parker<br>Oliver E. Twaddell<br>GOLDBERG SEGALLA LLP<br>711 Third Avenue, Suite 1900<br>New York, NY 10017<br>Tel: (646) 292-8700<br>jparker@goldbergsegalla.com<br>otwaddell@goldbergsegalla.com<br>Counsel for Defendant Chemicals<br>Inc.<br>Served via E-mail |
| Ethan R. Ware<br>WILLIAMS MULLEN<br>1230 Main Street, Suite 330<br>Columbia, SC 29201<br>Tel: (803) 567-4600<br>eware@williamsmullen.com<br>Counsel for Defendant Nation Ford<br>Chemical Company<br>Served via E-mail | Clifford J. Zatz<br>CROWELL & MORING<br>1001 Pennsylvania Avenue, NW<br>Washington, D.C. 20004<br>Tel: (202) 624-2500<br>czatz@crowell.com<br>pcondron@crowell.com<br>Counsel for Defendant AGC<br>Chemicals Americas, Inc. and<br>AGC, Inc.<br>Served via E-mail |

| | |
|---|---|
| Kurt D. Weaver<br>WOMBLE BOND DICKSON (US) LLP<br>555 Fayetteville Street, Suite 1100<br>Raleigh, NC 27601<br>Tel: (919) 755-2100<br>kurt.weaver@wbd-us.com<br>Counsel for Defendant Deepwater Chemicals, Inc.<br>Served via E-mail | Kirk G. Warner<br>Clifton L. Brinson<br>Addie K.S. Ries<br>SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN,<br>LLP.<br>150 Fayetteville Street, Suite 2300<br>Raleigh, North Carolina 27601<br>Tel: (919) 821-1220<br>kwarner@smithlaw.com<br>cbrinson@smithlaw.com<br>aries@smithlaw.com<br>Counsel for Defendant Dynax Corporation<br>Served via E-mail |
| CENTRAL SPRINKLER, LLC<br>c/o Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801<br>Served via First Class U.S. Mail | FIRE PRODUCTS GP HOLDING, LLC<br>c/o Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801<br>Served via First Class U.S. Mail |
| ANGUS INTERNATIONAL SAFETY<br>GROUP, LTD.<br>c/o Paul Williams, CEO<br>Station Road, High Bentham<br>Near Lancaster, United Kingdom<br>LA2 7NA<br>Served via First Class U.S. Mail | |